UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN A. JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | No. C-07-2387 EMC<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR REMAND; AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 11-12)** |

On November 16, 2004, Robin A. Johnson filed an application for Social Security disability insurance benefits.[1]  AR 15.  Mr. Johnson has exhausted his administrative remedies with respect to his claim of disability.  This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g).  Mr. Johnson has moved for summary judgment or, in the alternative, a remand for additional proceedings.  The Commissioner has filed a cross-motion for summary judgment.  Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS IN PART** Mr. Johnson's motion and **GRANTS IN PART** and **DENIES IN PART** the Commissioner's cross-motion.

---

[1] In both his complaint and motion for summary judgment, Mr. Johnson claims that he also filed an application for Supplemental Security Income ("SSI") benefits.  *See* Compl. ¶ 1; Mot. at 2 n.1.  However, there is no evidence that Mr. Johnson ever filed an application for SSI benefits, a fact that Mr. Johnson admits.  *See* Mot. at 2 n.1 (stating that "this application is missing from the record").  Furthermore, the ALJ decision which this Court is reviewing covered only Mr. Johnson's request for disability insurance benefits.  The Court therefore considers only those issues related to Mr. Johnson's application for disability insurance benefits.

## I. FACTUAL & PROCEDURAL BACKGROUND

On November 16, 2004, Mr. Johnson filed his current claim for Social Security Disability Insurance benefits, *see* AR 55-57, alleging disability as of August 3, 2004, based on arthritis from the base of the skull to the shoulder, hepatitis C, diabetes, tendonitis in both shoulders, carpal tunnel in both wrists, dizziness, headaches, nausea, fatigue, and upset stomach. *See* AR 70-71.  On March 18, 2005, Mr. Johnson's claim was denied. *See* AR 34-38. Mr. Johnson's claim was denied again on reconsideration on June 17, 2005. *See* AR 42-46. Mr. Johnson's claim was denied a third time on August 24, 2006, when the ALJ held that Mr. Johnson was not disabled under the Social Security Act. *See* AR 15-23.

The ALJ evaluated Mr. Johnson's claim of disability using the five-step sequential evaluation process for disability required under federal regulations. *See* 20 C.F.R. § 404.1520 (2007).

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work considering the claimant's age, education, and work experience together with the claimant's residual functional capacity ("RFC"), or what the claimant can do despite impairments. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At step one, the ALJ found that, although Mr. Johnson had engaged in some work, it was insufficient to constitute substantial gainful activity. *See* AR 16. At step two, the ALJ found that Mr. Johnson had the following severe impairments: "degenerative disc disease of the cervical spine without clinical radiculopathy, shoulder pain without rotator cuff tear, hepatitis C positivity with mild inflamation circa May 2004 but no treatment, and at least through February 11, 2005, ongoing alcoholism." AR 16. According to the ALJ, Mr. Johnson's "arthritis of the skull, diabetes, carpal

tunnel, dizziness, headaches, nausea, fatigue, and stomach upset" were not severe impairments. AR 16. At step three, the ALJ found that none of Mr. Johnson's impairments met or equaled in severity and duration the impairments listed in Appendix 1, Subpart P, Regulations No. 4. *See* AR 18. At step four, the ALJ considered Mr. Johnson's impairments according to Section 12.09 of the listings because of evidence of ongoing alcoholism.[2] *See* AR 18. The ALJ, accepting the opinion of an examining physician, concluded that Mr. Johnson had no significant limitations to standing, walking, sitting, bending, stooping, crouching, or performing manipulation tasks at table-top level and that he would be able to lift up to 40 pounds occasionally and 20 pounds frequently, but should no more than occasionally perform overhead activities with the left arm extremity or more than rarely with the right upper extremity. *See* AR 18. Based on these limitations, the ALJ determined that Mr. Johnson would be unable to return to his past relevant work, *see* AR 20, but that his residual functional capacity ("RFC") still enabled him to perform a significant range of light work. *See* AR 18. At step five, the ALJ examined Mr. Johnson's limitations with his age, education, and vocationally relevant past work experience to determine whether he could perform other jobs existing in significant numbers in the national economy. The ALJ concluded that Mr. Johnson could find work that exists in significant numbers in the national economy based on a vocational expert's testimony who assumed that Mr. Johnson was capable of performing light work. *See* AR 21. Accordingly, the ALJ concluded that Mr. Johnson was not under a disability within the meaning of the Social Security Act at any time on or before the date of his decision. *See* AR 21.

Mr. Johnson's request for review of the ALJ's decision was summarily denied by the Appeals Council on March 1, 2007. *See* AR 4-6. This petition ensued. Mr. Johnson argues that the ALJ's decision was erroneous for the following reasons: (1) The ALJ improperly rejected the opinion of Mr. Johnson's treating physician and favored instead the opinions of an examining physician and a state agency physician; (2) the ALJ failed to recognize as severe impairments Mr. Johnson's carpal tunnel syndrome and myofascial pain syndrome; (3) the ALJ provided insufficient

---

[2] Section 12.09 of the listings "references nine other mental disorder listings in section 12.00 which must be used to evaluate the behaviorial [sic] or physical changes resulting from regular use of addictive substances." *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140-41 (6th Cir. 1987).

reasons for rejecting Mr. Johnson's testimony; and (4) the Social Security Administration failed to meet its burden of proving that there is other work that Mr. Johnson can perform. The Court shall address each argument below.

## II. DISCUSSION

A. Legal Standard

The district court may disturb the final decision of the Social Security Administration "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993). Substantial evidence means "more than a mere scintilla, but less than a preponderance." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (internal quotation marks omitted). The court's review "must consider the record as a whole," both that which supports as well as that which detracts from the Secretary's decision. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "If the evidence admits of more than one rational interpretation, [the court] must uphold the decision of the ALJ." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

B. Opinion of Treating Physician

Mr. Johnson argues that the ALJ erred by rejecting the opinion of Mr. Johnson's treating physician, Dr. Douglas J. Abeles, an orthopaedic surgeon. In a medical source statement,[3] dated January 24, 2005, Dr. Abeles opined that Mr. Johnson was limited to lifting or carrying less than ten pounds, was "limit[ed] . . . to sitting for 4-5 hours, [and] standing and walking for 2 hours with changes of position every 30 minutes, and [was] completely preclud[ed] . . . from all climbing, stooping, crawling or reaching." AR 143-144.

---

[3] "Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis. Adjudicators are generally required to request that acceptable medical sources provide these statements with their medical reports. Medical source statements are to be based on the medical sources' records and examination of the individual; *i.e.*, their personal knowledge of the individual." SSR 96-5p.

As a preliminary matter, the Court addresses the Commissioner's contention that Dr. Abeles is not a treating physician in the first place. A treating physician is defined as the claimant's own physician who has provided or continues to provide the claimant with medical treatment or evaluation in an ongoing treatment relationship. *See* 20 C.F.R. § 404.1502. A relationship between a physician and a patient is considered an ongoing relationship "when the medical evidence establishes that [the patient] see[s], or [has] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the patient's] type of medical condition(s)." *Id.*; *see also Benton v. Barnhart*, 331 F.3d 1030, 1035-36 (9th Cir. 2003) (explaining that there is no floor to how many times a doctor should see a patient in order to be considered a treating physician, so long as the doctor is seeing the patient "'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for . . . [the] condition(s)'"). However, if a patient seeks the help of a physician for the sole purpose of obtaining a report to support a disability claim, that physician will not be considered a treating physician. *See* 20 C.F.R. § 404.1502.

Contrary to what the Commissioner argues, Dr. Abeles is a treating physician under the definition provided in 20 C.F. R. § 404.1502. The evidence reflects that Dr. Abeles provided medical treatment or evaluation for Mr. Johnson for a period of almost a year. Mr. Johnson initially saw Dr. Abeles in May 2004. *See* AR 166-72. After this initial visit, Mr. Johnson met with Dr. Abeles again in June 2004 and, in July 2004, Dr. Abeles wrote a report in which he recommended continuation of conservative treatment, occasional use of anti-inflammatory medications, and physical therapy for Mr. Johnson. *See* AR 164. Dr. Abeles also recommended that Mr. Johnson follow up in three to four months and that "[p]ain management consultation with Dr. Panjabi may be appropriate." AR 164. Although not entirely clear, it appears that Dr. Abeles saw or at least monitored Mr. Johnson several more times in September 2004, October 2004, January 2005, and February 2005. *See* AR 159-64. On March 1, 2005, Dr. Abeles received and reviewed a report of an MRI of Mr. Johnson's right shoulder performed on February 24, 2005. *See* AR 158. Thus, there was an ongoing treatment relationship between Mr. Johnson and Dr. Abeles for at least the period

May 2004 to March 2005.[4]  *See Benton*, 331 F.3d at 1035 (holding that a psychiatrist who examined a patient only once was still considered a treating physician because the psychiatrist oversaw and monitored the patient's care).

The Commissioner makes only two arguments to support its position that Dr. Abeles is not a treating physician, neither of which is availing. First, the Commissioner asserts that the ALJ himself considered Dr. Abeles an examining physician only, and not a treating physician. However, as is apparent from the decision, the ALJ never made an express finding that Dr. Abeles was not a treating physician. While the ALJ did note that Dr. Abeles' January 2005 medical source statement was based on only a "single exam," that simply seems to have been a reason for discounting the opinion contained in the medical source statement. Second, the Commissioner argues that Dr. Abeles' treatment note in July 2004, stating that Dr. Abeles saw Mr. Johnson for "consultation," is proof that Dr. Abeles was not a treating physician. The Commissioner's characterization of Dr. Abeles' note as a treatment note undermines the position taken. Furthermore, the substance of the note reflects that treatment was being provided. *See* AR 164 (providing a plan of action for treatment). Finally, that note alone does not dictate the relationship between Mr. Johnson and Dr. Abeles. Rather, the entire record must be reviewed. If this were a case where Dr. Abeles had stopped treating Mr. Johnson for a period of time, then wrote a report only after the request of an attorney for a disability hearing, then he most likely would not be considered a treating physician. *See, e.g.*, *Arnone v. Bowen*, 882 F.2d 34, 40-41 (2d Cir. 1989) (holding a doctor is not a treating physician because (1) a gap of over at least ten years from the initial treatment to an examination does not demonstrate an ongoing relationship and (2) the doctor's reexamination at the claimant's

---

[4] There is insufficient evidence to establish that Mr. Johnson sought the help of Dr. Abeles for the sole purpose of obtaining a report for a disability claim. The Court acknowledges that, based on the medical records supplied by Dr. Abeles, Mr. Johnson may have initially seen Dr. Abeles in conjunction with a worker's compensation claim. *See* AR 168. Also, many of the medical records have a stamp that says, "DISABLED UNTIL ," which suggests that the medical assistance was being sought for disability-related reasons. *See, e.g.*, AR 159-60, 162-63, 165-66. Still, this evidence does not establish Mr. Johnson's visits to Dr. Abeles were for the *sole* purpose of supporting a disability claim. The Court notes that, for purposes of this case, Mr. Johnson first saw Dr. Abeles in May 2004, *see* AR 166-72, but did not file the claim for disability at issue until some six months later. *See* AR 55-57. Furthermore, as discussed above, after his initial visit to see Dr. Abeles, Mr. Johnson continued to seek Dr. Abeles' help for medical reasons.

lawyer's request was suspect, and was further support that the doctor did not have a treating relationship with the claimant). However, that is not the case. As discussed above, the record establishes that Mr. Johnson had an ongoing relationship with Dr. Abeles from May 2004 to March 2005.

Because Dr. Abeles was in fact a treating physician for Mr. Johnson, the ALJ had to give the opinions of Dr. Abeles -- including that expressed in the medical source statement of January 2005 -- controlling weight so long as they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [were] not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). Because Dr. Abeles's opinions were controverted (*e.g.*, by Dr. Lara A. Salamacha, an examining physician, and a state agency consulting physician), the ALJ was entitled to reject Dr. Abeles's opinions in the medical source statement of January 2005 but only by providing specific and legitimate reasons for doing so based on substantial evidence in the record. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).

In the instant case, it is clear that the ALJ did not give Dr. Abeles' opinion -- in particular, that contained in the January 2005 medical source statement -- controlling weight. This was largely because there were other "less restrictive medical opinions." AR 19. In addition, the ALJ noted that the opinion in the medical source statement was based on only a single examination which did not cite any "specific objective signs and laboratory findings," failed "to include an estimation of onset date or projection for the duration that [Mr. Johnson] would be expected to have this degree of limitations," and was unsupported by any "treatment notes of substance." AR 19. The question then is whether the ALJ sufficiently identified specific and legitimate reasons for rejecting Dr. Abeles' opinion.

The Court finds that the ALJ was justified in refusing to give Dr. Abeles' opinion controlling weight. As the ALJ noted, there were other less restrictive medical opinions -- in particular, the opinion of Dr. Lara Salamacha, an examining physician. The Ninth Circuit has made clear that an ALJ may reject the opinion of a treating physician when it is contradicted by the opinion of an examining physician and the examining physician provides independent clinical findings that differ from the findings of the treating physician. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

"Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence or (2) findings based on objective medical tests that the treating physician has not herself considered." *Id.* Contrary to what Mr. Johnson argues, Dr. Salamacha provided independent clinical findings that differed from those of Dr. Abeles. Based on a physical examination in February 2005, Dr. Salamacha made findings on the range of motion that Mr. Johnson had in his cervical spine, dorsolumbar spine, hips, knees, ankles, shoulder, elbows, wrists, fingers and thumbs, and legs. *See* AR 152. In contrast, for the January 2005 medical source statement from Dr. Abeles, it is not evident that Dr. Abeles performed any physical examination of Mr. Johnson and, even if he did, there are no findings at all as to what Mr. Johnson's range of motion was for any part of his body. *See* AR 143-44, 161. Furthermore, while it appears that Dr. Abeles did conduct a physical examination of Mr. Johnson in June 2004 (as reflected in a note written by Dr. Abeles in July 2004), the physician examination performed by Dr. Abeles was much more limited in nature than that performed by Dr. Salamacha – *i.e.*, it did not involve as extensive tests for range of motion. *See* AR 164.

     Moreover, the ALJ provided additional reasons as to why he was only affording Dr. Abeles' opinion limited weight. *See Orn*, 495 F.3d at 633 (stating that, even if an examining physician's opinion is "substantial evidence," an ALJ must still examine the factors listed in 20 C.F.R. § 404.1527 to determine what weight to afford a treating physician's opinion). Under the relevant regulation, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." § 404.1527(d)(3). In the instant case, the ALJ correctly pointed out that, in his January 2005 medical source statement, Dr. Abeles failed to provide specific medical findings to support his opinion on Mr. Johnson's functional limitations, simply citing to pain in the neck and shoulders and referring to arthritis. *See* AR 143-44; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (stating that an ALJ is entitled to discredit a treating physician's opinion that is "brief, conclusory, and inadequately supported by clinical findings"); *Batson v. Commissioner of Soc. Sec'y Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (same). In addition, as the ALJ noted, the treatment

notes provided by Dr. Abeles were lacking in substance, with most containing, in essence, no details at all. *See, e.g.*, 165-72. There is only one note, dated prior to January 2005, that provides some level of detail, *see* AR 158, 164, and it too is lacking in substance as it does not support Dr. Abeles' opinion on Mr. Johnson's functional limitations. In that note, dated July 2004, Dr. Abeles indicated that the functional limitations were not severe, recommending only "conservative treatment with occasional use of antiinflammatory medications." AR 164.

C.    Step Two Findings Re Carpal Tunnel Syndrome and Myofascial Pain Syndrome

Mr. Johnson argues next that the ALJ erred at step two of the sequential analysis by failing to find that his carpal tunnel syndrome and myofascial pain syndrome were severe impairments. Pursuant to step two, a claimant must have a severe impairment, or combination of impairments, significantly limiting his physical or mental ability to do basic work activities in order to be considered disabled.[5] *See* 20 C.F.R. § 404.1520(c)). For an impairment to be nonsevere, the evidence must establish a "slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28). The Ninth Circuit has explained that the step two inquiry is a de minimis screening device to dispose of groundless claims. *See Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). But, even though the standard for step two is de minimis, the claimant must still prove the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. § 404.1508.

Mr. Johnson argues first that the ALJ erred in finding his carpal tunnel syndrome nonsevere because the medical records from the Advanced Pain Management and Rehabilitation Medical Group, Inc. ("APMRMG") reflect that he has a history of carpal tunnel, that his Phalen test (a test used to diagnose carpal tunnel) was positive, and that he was diagnosed with bilateral carpal tunnel syndrome. *See* AR 135. While this evidence adequately establishes that Mr. Johnson did have a medical impairment, the issue for the Court is whether there was evidence demonstrating that this

---

[5] Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. *See* 20 C.F.R. § 404.1521.

impairment had more than a minimal effect on Mr. Johnson's ability to do work. In his decision, the ALJ stated that there was "[in]sufficient objective medical signs and laboratory findings of a longitudinal nature to justify a finding of a 'severe' impairment," AR 16, but this was an error. As explained in Social Security Ruling 96-3p, "[a]n individual's *symptoms* may cause limitations and restrictions in functioning which, when considered at step 2, may require a finding that there is a 'severe' impairment(s)." SSR 96-3p (emphasis added).

> If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process *even if the objective medical evidence would not in itself establish that the impairment(s) is severe.*

SSR 96-3p (emphasis added); *see also Smolen*, 80 F.3d at 1290 (holding that the ALJ erred in failing to "consider [Smolen's] subjective symptoms in making the severity determination"). Here, the ALJ should have explained why Mr. Johnson's symptoms had no more than a minimal effect on his ability to do basic work activities.[6]

Mr. Johnson further argues that the ALJ erred by not even addressing in his decision another impairment that was diagnosed by APMRMG, *i.e.*, myofascial pain syndrome. *See* AR 129. There is no dispute that the ALJ did not discuss this medical impairment in his decision. While the ALJ did not have an obligation to discuss all evidence presented to him, he was required to "explain why 'significant probative evidence has been rejected.'" *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Here, the diagnosis of myofascial pain syndrome was significant probative evidence. The diagnosis of the impairment was probative evidence in light of Mr. Johnson's claim that he was disabled because of, *inter alia*, arthritis and tendonitis in the shoulders, *see* AR 70-71; furthermore, it was significant evidence as it was a diagnosis made by a treating physician. The ALJ therefore should have explained in his decision why that medically determinable impairment was or

---

[6] The Court notes that, at the hearing, Mr. Johnson testified before the ALJ that, because of his carpal tunnel syndrome, he had to wear braces on his wrists and keep his hands crossed over his body as that was the only comfortable position for them; in other positions, his shoulders and neck would hurt. *See* AR 243. Mr. Johnson also testified that the carpal tunnel syndrome affected his ability to hold objects such as a hammer, to type, and to do household chores such as cleaning. *See* AR 243-44.

was not a severe impairment for purposes of step two. *See also Smolen*, 80 F.3d at 1282 (noting that the claimant provided uncontradicted objective medical evidence of certain physical impairments but that the ALJ considered only some of those impairments and therefore erred); *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (holding that the ALJ erred by not providing an explanation for rejecting relevant or probative evidence because "the ALJ cannot reject evidence for no reason or for the wrong reason.").

D.     Credibility of Mr. Johnson's Testimony

Mr. Johnson also argues that the ALJ erred in finding him not credible. Under Ninth Circuit precedent, "once a claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based *solely* on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1994) (emphasis added). The Ninth Circuit established this high burden because "'pain is subjective and not susceptible to measurement by reliable techniques.'" *Id.* at 345-46. In the instant case, Mr. Johnson has produced objective medical evidence of his impairments, *see, e.g.*, AR 143-44 (Dr. Abeles discussing MRI and x-rays), AR 151-53 (Dr. Salamacha discussing medical records), and so the ALJ was required to present specific, "clear and convincing" reasons for rejecting Mr. Johnson's testimony "[u]nless there is affirmative evidence showing that [he] is malingering." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

As reflected in his decision, the ALJ concluded that Mr. Johnson's allegations regarding his limitations were "not totally credible," AR 22, for several reasons. First, the ALJ observed that the "reports of allegedly persistent pain appear to be at least somewhat in excess of the pathology confirmed by X-ray and MRI findings." AR 19. Second, the ALJ found Mr. Johnson's testimony questionable because he was still able to take care of a dog and because his statement in a questionnaire, dated December 8, 2004, that he could not perform his own grocery shopping or household chores was inconsistent with what he told Dr. Salamacha two months later -- *i.e.*, that he is "fully independent with daily household chores." AR 19. Also, the ALJ cited Mr. Johnson's counsel's failure to provide documented evidence that Mr. Johnson received medical treatment more recently than February 2005. Finally, the ALJ found Mr. Johnson's earnings in 2005 of $3,222.74

from Sypris Test & Measurement, Inc. warranted discrediting Mr. Johnson's credibility.  *See* AR 19-20.

The Court concludes that the record before the ALJ and his findings were not sufficient to constitute specific, clear and convincing reasons for rejecting Mr. Johnson's testimony.  While the ALJ was entitled, under *Bunnell,* to consider as one (but not the sole) factor the lack of objective medical evidence to fully corroborate the alleged severity of pain, the other additional reasons cited by the ALJ are problematic.  First, taking care of a dog -- walking her approximately three times a day for 10 to 15 minutes at a time as described by Mr. Johnson, *see* AR 248 -- did not necessarily constitute activity inconsistent with his claimed limitations (*e.g.*, difficulty finishing housework and typing, *see* AR 244, reaching full length or moving his head up, *see* AR 242, standing longer than 20 minutes, *see* AR 245, and sleeping on his back due to shoulder pain, *see* AR 246).  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (stating that, "only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility").

Second, with respect to the alleged contradiction in Mr. Johnson's testimony, the ALJ's characterization of the evidence was not entirely accurate.  Contrary to what the ALJ stated in his decision, Dr. Salamacha did not state that Mr. Johnson was "*fully* independent" with daily household chores, AR 19 (emphasis added); rather, Dr. Salamacha simply stated that "[t]he claimant is independent."  AR 151.  This is not an insignificant difference.  Indeed, the Court notes that, in the questionnaire at issue, Mr. Johnson stated that he could not do his own grocery shopping or household chores, *see* AR 89-90, but later seem to qualify that statement, implying he could complete household chores but with some difficulty -- after about fifteen minutes, he had to stop because of the pain.  *See* AR 90.  It appears the ALJ may not have taken into account this qualification by Mr. Johnson, since this statement would not necessarily be inconsistent with the statement (apparently made to Dr. Salamacha) that he is independent (though perhaps not fully independent) with household chores.  The situation here is thus analogous to *Reddick*, where the Ninth Circuit rejected the ALJ's credibility finding because the ALJ appears to have failed to take into account the entirety of the claimant's statement.  *See Reddick*, 157 F.3d at 722-24 (noting that

12

the ALJ left out crucial facts that the claimant reported that she was fatigued and that she would only do household chores for ten minutes a day and then only if she felt up to it).

Third, with respect to medical treatment after February 2005 and Mr. Johnson's earnings of $3,222.74 in 2005, there is no dispute that, after the ALJ issued his decision, Mr. Johnson provided to the Appeals Council medical records showing that he had received treatment since February 2005 (more specifically, from August 2005 to June 2006)[7] and submitted a letter explaining that the earnings were from disability payments and vacation pay from the previous year. *See* AR 7, 201-29. Because the Appeals Council considered this evidence but still affirmed the ALJ's decision, *see* AR 5 ("We found that this information does not provide a basis for changing the [ALJ's] decision."), the Court may consider the evidence even though not proffered to the ALJ. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).[8]  Given this enhancement to the record after the hearing, the ALJ did not have the benefit of all information in assessing Mr. Johnson's credibility. The Court also notes that the ALJ should have an opportunity to more fully develop the record further with respect to the $3,222.74 in earnings in 2005. *See Tonapetyan*, 242 F.3d at 1150 ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"). Accordingly, the ambiguity of the ALJ's reasoning and incompleteness of the record before the ALJ warrants remand on the issue of Mr. Johnson's credibility.

E.     RFC and Vocational Expert Testimony

Finally, Mr. Johnson contends that the Social Security Administration failed to meet its burden at step five -- *i.e.*, failed to demonstrate that, based on his residual functional capacity, age, education, and work experience, he was capable of participating in some substantial gainful activity that exists in significant numbers. *See* 20 C.F.R. § 404.1520(f). The Court agrees.

---

[7] The Court acknowledges that the ALJ gave Mr. Johnson an opportunity to supplement his medical records, *see* AR 18, 19, 264, but that Mr. Johnson, for whatever reason, did not do so within the time frame given by the ALJ.

[8] Unlike the Ninth Circuit, some courts have held that "evidence not presented to the Administrative Law Judge (ALJ) should not be reviewed by the district court nor be the basis of a remand to the Commissioner unless the evidence is new and material and there is good cause for not having produced the evidence earlier." *Matthews v. Apfel*, 239 F.3d 589, 590 (3d Cir. 2001).

It is well established that an ALJ may use the testimony of a vocational expert to assess if there are other types of jobs a claimant can perform, but the hypothetical questions must "'set out all the limitations and restrictions of the particular claimant.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Embrey*, 849 F.2d at 422). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

In the instant case, the Court has already concluded that the ALJ's decision to reject Dr. Abeles' more restrictive medical assessment (provided in the medical source statement of January 25, 2005), *see* AR 144, was not erroneous. Therefore, the ALJ did not err in presenting a hypothetical to the vocational expert that did not include Dr. Abeles' more restrictive medical assessment. That being said, the ALJ still erred at this step because he did not include in the hypotheticals Dr. Salamacha's findings that Mr. Johnson can "perform occasional overhead lifting with his left arm and rare overhead reaching with his right arm." AR 153; *see also* AR 253-60. Because the ALJ did not include Dr. Salamacha's findings in the hypotheticals, and because the ALJ's refusal to credit Mr. Johnson's testimony and findings regarding Mr. Johnson's claim of carpal tunnel syndrome and myofascial pain syndrome must be re-examined on remand, the limited hypotheticals the ALJ posed to the vocational expert may be incomplete and hence not clearly supported by the record. Therefore, the opinion of the vocational expert as given to the ALJ below cannot, on this record, be relied upon in the step five analysis. *See Gallant*, 753 F.2d at 1456. Remand is further warranted on this part.

F.     Remand

Because the Court has found the ALJ's decision erroneous for the reasons stated above, remand is appropriate. Here, further administrative proceedings would serve a useful purpose. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) ("Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."). The ALJ must re-examine and re-articulate his findings as to Mr. Johnson's credibility and whether the carpal tunnel syndrome and myofascial pain syndrome may be considered severe impairments at step two. These

findings along with complete presentation of Dr. Salamacha's findings should be included in any hypothetical presented to a vocational expert.

In addition, on remand, should the ALJ find Mr. Johnson disabled, he is not precluded from assessing the materiality of any drug or alcohol abuse under § 12.09.

### III. CONCLUSION

Based on the foregoing, the Court grants in part Mr. Johnson's motion to remand for further proceedings and grants in part and denies in part Defendant's motion for summary judgment.

This order disposes of Docket Nos. 11 and 12.

IT IS SO ORDERED.

Dated: April 25, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge